In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-12-00290-CR

**BRETT TANNER HERRINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**San Jacinto County, Texas**
**Trial Cause No. 10,467**

## MEMORANDUM OPINION

A jury found Brett Tanner Herrington guilty of assault, as a lesser included offense of aggravated assault as alleged in the indictment. The trial court assessed as punishment one year of confinement in county jail, probated for two years, and a $500 fine. On appeal, Herrington contends the evidence is insufficient to support his conviction because the State failed to disprove his assertions of self-defense beyond a reasonable doubt.

"[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (applying *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Under the *Jackson* standard, we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318–19). "[I]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

The defendant bears the burden of producing some evidence to support his claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces some evidence to support his defense, the

2

State bears the burden of persuasion to prove its case beyond a reasonable doubt.

*Id.* On appeal

> we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). "Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Id.* The jury's determination of guilt includes an implicit finding against the theory of self-defense. *Id.*

A person generally "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (West 2011). The use of force is not justified "in response to verbal provocation alone[.]" *Id.* § 9.31(b)(1). A person is not required to retreat before using force if the person neither provoked the person against

whom the force is used, nor is engaged in criminal activity at the time the force is used. *Id.* § 9.31(e).

The jury heard testimony that animosity had existed between Herrington and the victim, Thomas Barclay, for many years. In his youth, Herrington worked for Barclay and Herrington testified that Barclay had denied him his rightfully-earned wages.

On the date of the offense, Barclay went to a nightclub and encountered Herrington for the first time in many years. According to Barclay, Herrington walked up to him that night and stated that he would kill Barclay before he died. Barclay claimed he tried to avoid Herrington that evening, but Herrington approached him a second time and said, "'Let's dance[,]'" which Barclay understood to suggest that they fight. At some point later in the evening, Barclay entered the restroom and noticed Herrington at the back of the room. Herrington demanded that Barclay leave the restroom. Barclay did not leave immediately, but when he did turn to leave Herrington unexpectedly struck Barclay with his fist. Barclay claimed he had one hand at his side and was reaching for the door with the other. Barclay admitted he carried a pocketknife in his pocket, but he denied threatening Herrington at any point in the evening. Barclay testified that he lost

4

consciousness when Herrington struck him. Barclay sustained a broken jaw and a fractured nose.

A friend of Barclay's testified as an eyewitness to the assault. The witness stated that Herrington told Barclay to get out and Barclay responded that he would when he finished using the restroom. He did not see Barclay with a weapon and did not see Barclay threaten Herrington in any way before Herrington hit Barclay. The witness stated that Barclay turned to leave, then turned to look back, and then Herrington hit Barclay on the jaw. Herrington told the witness, "'If you say anything, I'm going to whoop your ass.'"

An acquaintance of Barclay's testified that he was present when Herrington approached Barclay on the dance floor and later in the restroom when Herrington told Barclay to leave. According to this witness, Barclay made no threatening move towards Herrington. He stated that Herrington struck Barclay while Barclay was reaching for the door to leave the restroom, then Herrington hit Barclay several more times as Barclay slid to the floor. When the witness tried to intervene, Herrington told him to get out of the way or he would do the same thing to him.

A former employee of Barclay's, who is married to Barclay's ex-wife, testified that Barclay had a bad reputation for dishonesty and aggressiveness. According to this witness, Barclay carries a clip-on knife with a three to four inch

blade. In 1998, the witness had heard Barclay say of Herrington that if he ever caught him somewhere, he would kill him. He conveyed the threat to Herrington.

Herrington testified that Barclay tried to shake his hand when they first encountered each other at the nightclub. Herrington claimed that he asked Barclay to leave the restroom because he did not want to be backed into a corner by a person he knew wanted to harm him. According to Herrington, Barclay blocked the exit when he tried to leave. Herrington said he felt threatened because Barclay put his hand on his right pocket where Herrington knew Barclay kept a knife. Herrington felt he was in danger of serious bodily injury or death. Herrington admitted he hit Barclay three or four times. He denied landing blows while Barclay was unconscious. Herrington also denied that he followed Barclay to the door, and instead, claimed that Barclay "turned around and come back in and swung at me."

The jury resolved the conflicts in the testimony. *See Hooper*, 214 S.W.3d at 13. Only Herrington perceived any threatening words or movement from Barclay while the men were in the restroom. The jury could believe Barclay and the eyewitnesses, disbelieve any contradictory testimony from Herrington, rationally determine that the use of force was not immediately necessary, and find that Herrington assaulted Barclay. *See Denman v. State*, 193 S.W.3d 129, 132-34 (Tex.

6

App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that jury could reject defendant's claim that victim pointed a loaded shotgun at him and defendant and defense witnesses' testimony regarding past altercations between defendant and the victim). The evidence is sufficient to support the jury's verdict. We overrule the appellant's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 22, 2013
Opinion Delivered September 4, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.

7